**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | | |
|---|---|---|
| AMERISURE INSURANCE COMPANY, as subrogee of, BOGGS TRANSPORT INC., | ) ) ) ) | CASE NO.: 4:23-cv-02445-JD |
| Plaintiff, | ) ) | |
| v. | ) ) | **Memorandum Opinion and Order on Motions to Exclude Expert Testimony** |
| OX BODIES, INC., | ) ) | |
| Defendant and Third-Party Plaintiff. | ) ) | |
| v. | ) ) | |
| WASTEQUIP MANUFACTURING COMPANY, LLC, | ) ) ) | |
| Third-Party Defendant | ) ) ) | |

Before the Court are Defendant and Third-Party Plaintiff Ox Bodies, Inc.'s motions to exclude the testimony of Plaintiff's designated experts, Kenny A. McClure, P.E., M.S.M.E., CFEI, and K.R. Davis, P.E., pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). (DE 64; DE 65.) Plaintiff has filed responses in opposition (DE 66; DE 67), and Ox Bodies has filed replies (DE 68; DE 69). The motions challenge the admissibility and scope of the experts' proposed testimony concerning the origin and cause of a fire involving a dump truck upfitted with an Ox Bodies tarping system, raising issues of qualifications, reliability, and fit under Rule 702.

1

For the reasons below, the motions are addressed together and granted in part and denied in part.

## I.     BACKGROUND

### A.     Factual Background

This subrogation action arises from a fire that occurred on April 10, 2022, involving a dump truck owned by Boggs Transport, Inc. ("Boggs") and insured by Plaintiff Amerisure Insurance Company ("Amerisure"). (*See* DE 1.) The fire began in a parked dump truck identified as Truck No. 863 at Boggs's facility in Pageland, South Carolina, and spread to four adjacent trucks, resulting in damage to five vehicles. No personal injuries are alleged.

At the time of the fire, Truck No. 863 had been upfitted with a tarping system manufactured and installed by Defendant and Third-Party Plaintiff Ox Bodies, Inc. ("Ox Bodies"). Amerisure, as subrogee of Boggs, initiated this action asserting claims against Ox Bodies arising from the alleged origin and cause of the fire. Ox Bodies denies liability and disputes both the location of the fire's origin and the mechanism by which the fire ignited.

In support of its claims, Amerisure has designated two expert witnesses. Kenny A. McClure, P.E., M.S.M.E., CFEI, is offered as an expert in fire origin. Mr. McClure opines that the fire originated along the driver's side of Truck No. 863, in the area of the battery compartment and associated electrical components mounted along the frame rail. (McClure Rep., DE 64-2.) K.R. Davis, P.E., is offered as an expert in fire causation. (Davis Rep., DE 65-2.) Mr. Davis opines that the fire was caused by

an electrical failure associated with components of the tarping system, including a relay or controller installed as part of the Ox Bodies upfit.

Ox Bodies has retained its own experts, who dispute both the origin and cause opinions advanced by Amerisure's experts and attribute the fire to an alternative electrical source unrelated to the tarping system. The parties' competing expert opinions form the basis of the motions presently before the Court.

**B.      The Parties' Positions**

Ox Bodies moves to exclude the testimony of both of Amerisure's experts pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). With respect to Mr. McClure, Ox Bodies contends that his origin opinion is unreliable and internally inconsistent; that it encompasses an overly broad area lacking analytical precision; and that he failed to rule out alternative electrical activity observed in the vehicle adequately. (DE 64.) Ox Bodies further argues that Mr. McClure's opinion is speculative and unhelpful to the jury. (*Id.*)

With respect to Mr. Davis, Ox Bodies argues that his causation opinions fail to comply with generally accepted principles of fire investigation, including those outlined in NFPA 921, are not based on sufficient facts or data, and rely on improper extrapolation from exemplar testing, recall information, and dissimilar incidents. (DE 65.) Ox Bodies further contends that Mr. Davis's opinions lack a reliable methodological connection to the specific relay and components at issue here. (*Id.*)

Amerisure opposes both motions. (DE 66; 67.) Amerisure asserts that Mr. McClure and Mr. Davis are qualified to offer the opinions proffered, that each employed reliable and accepted methodologies, and that Ox Bodies' criticisms concern factual disputes and credibility issues that should be resolved through cross-examination rather than exclusion. Amerisure further contends that the experts' opinions are relevant and will assist the trier of fact in understanding the origin and cause of the fire.

## II.     LEGAL STANDARD

District courts "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 589 (1993). Rule 702 of the Federal Rules of Evidence was amended in response to *Daubert* and its progeny to provide:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. The proponent of an expert witness's testimony bears the burden of proving that such testimony meets the requirements of Rule 702 by a preponderance of evidence. *See Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199

4

(4th Cir. 2001) (citing *Daubert*, 509 U.S. at 592 n. 10). As the text of the rule suggests, district courts have a "special obligation" as gatekeepers. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). This means that regardless of the content of the expert testimony, "a district court must ensure that the expert is qualified and that the expert's testimony is both relevant and reliable." *United States v. Smith*, 919 F.3d 825, 835 (4th Cir. 2019).

Beginning with qualifications, "[t]he test is whether, under the totality of the circumstances, the witness can be said to be qualified as an expert in a particular field through any one or more of the five bases enumerated in Rule 702—knowledge, skill, experience, training, or education." *Santos v. Posadas De Puerto Rico Assocs.*, Inc., 452 F.3d 59, 64 (1st Cir. 2006).

Turning to methodology, the court must consider "whether the reasoning or methodology underlying the testimony" is reliable. *Daubert*, 509 U.S at 592–93. Certain nonexclusive factors address the reliability of a particular theory or technique, namely, whether the theory or technique:

(1)    can be and has been tested;

(2)    has been subjected to peer review and publication;

(3)    has a known or potential rate of error; and

(4)    has attained general acceptance in the pertinent scientific community.

*See id.* at 593–94. Of course, given the district court's role regarding all expert testimony, "some of *Daubert*'s questions can help to evaluate the reliability even of experience-based testimony." *Kumho Tire Co.*, 526 U.S. at 151. But in any given case, which of these factors are applicable "depends upon the particular circumstances of

5

the particular case at issue." *Id.* at 150. And importantly, the focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595.

Finally, relevance is determined by ascertaining whether the testimony is sufficiently tied to the facts of the case such that it will aid the jury in resolving a factual dispute. *See id.* at 593; *see also* Rule 402, Fed. R. Evid.

However, "the trial court's role as a gatekeeper is not intended to serve as a replacement for the adversary system, and consequently, the rejection of expert testimony is the exception rather than the rule." *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litig. (No II) MDL 2502*, 892 F.3d 624, 631 (4th Cir. 2018) (alteration omitted) (quoting another source). Accordingly, the Court examines the challenged opinions individually rather than accepting or rejecting the experts' testimony wholesale.

## III.    DISCUSSION

Ox Bodies moves to exclude the testimony of Kenny A. McClure, P.E., M.S.M.E., CFEI, Amerisure's designated fire-origin expert (DE 64), and K.R. Davis, P.E., Amerisure's designated electrical-causation expert (DE 65). The Court's role under Federal Rule of Evidence 702 is not to determine whether an expert's conclusions are ultimately correct, but whether the proponent has shown, by a preponderance of the evidence, that the witness is qualified to offer the opinions at issue and that the testimony is reliable and will assist the trier of fact. See *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–95 (1993); *Kumho Tire Co. v.*

*Carmichael*, 526 U.S. 137, 147 (1999). In performing this gatekeeping function, the Court must independently evaluate the admissibility of each expert opinion and may admit certain opinions while excluding others that fail to satisfy Rule 702. *See Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281–82 (4th Cir. 2021); *Frankenberry v. Sig Sauer, Inc.*, No. 4:19-cv-02990-JD, 2022 WL 22887079, at *3–4 (D.S.C. Feb. 4, 2022).

## A.     Kenny A. McClure, P.E., M.S.M.E., CFEI

### 1.     Qualifications

Ox Bodies does not challenge Mr. McClure's qualifications as a fire investigator. (*See* DE 64-1 at 3-4.) The record reflects that Mr. McClure has substantial education, training, and experience in fire investigation, including investigation of vehicle fires. He holds an Associate of Applied Science in mechanical engineering technology, a Bachelor of Science in engineering technology, a Master of Science in mechanical engineering, and designations as a licensed professional engineer, a certified fire explosion investigator, a certified fire vehicle investigator, and a certified fire and explosion investigator. (DE 66-1 at 82-93.)  Based on the undisputed record, the Court finds that Mr. McClure is qualified to offer expert testimony regarding fire origin under Rule 702.

### 2.     Reliability of the Origin Opinion

Defendant primarily argues that McClure's testimony is unreliable because his defined origin area is allegedly inconsistent with Defendant's expert's electrical arcing theory. (DE 64 at 1; DE 64-1 at 7–9.)

Defendant frames the issue as a logical dilemma: if McClure's origin area excludes the arcing location identified by Defendant's expert, then McClure allegedly

failed to consider an obvious alternative ignition source. Conversely, Defendant argues that if McClure's origin area includes that location, the opinion is unnecessary because both parties' experts would be describing the same origin area. (DE 64-1 at 8–10.) The Court does not find this argument persuasive because it conflates the geographic scope of an origin determination with the identification of a specific ignition source.

To begin with, Mr. McClure is offered as an *origin* expert, not a causation expert. His opinions concern the location of the fire's origin within Truck No. 863, not the specific mechanism of ignition. (McClure Rep., DE 64-2 at 19–20; *see also* DE 66 at 6–13.) That distinction frames the Court's Rule 702 analysis.

Fire investigators commonly identify an area of origin rather than a single ignition point when the available physical evidence does not permit greater precision. See NFPA 921: Guide for Fire and Explosion Investigations. Mr. McClure applied this methodology here, concluding that the fire originated "along the driver's side of Truck 863 in the area where the battery compartment, conductors, and electrical components are mounted along the frame rail." (DE 64-2 at 20.) That conclusion was based on his examination of burn patterns, fire dynamics, and electrical artifacts observed during the investigation. The record reflects that Mr. McClure employed the systematic fire-investigation methodology described in NFPA 921. (DE 64-2 at 4, 20.) Ox Bodies does not challenge the reliability of that methodology itself. Accordingly, the Court concludes that McClure's origin analysis rests on a reliable investigative

8

methodology consistent with Rule 702. *See Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021).

Even assuming McClure's origin area overlaps with the location proposed by Defendant's expert, the testimony remains relevant and helpful because McClure explains the fire patterns, burn damage, and electrical artifacts that confine the fire's origin to a particular structural portion of the vehicle. Such analysis assists the jury in understanding the physical evidence and does not become inadmissible simply because the parties' experts may partially overlap in their conclusions.

To the extent the experts disagree about the scope or interpretation of the origin area, that disagreement presents a classic battle of the experts to be resolved by the jury rather than by exclusion under Rule 702. *See United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006) (holding that challenges to the factual basis of an expert opinion generally go to weight rather than admissibility).

### 3.    Defendant's Relay-Knowledge Argument

Ox Bodies also argues that Mr. McClure's opinion is speculative because he did not account for the post-fire location or condition of certain tarping-system relays. (DE 64-1 at 15–16.) The Court concludes that this argument improperly conflates origin analysis with ignition-source or causation analysis.

Under NFPA 921's scientific method, investigators commonly determine the fire's area of origin before identifying the specific ignition source. An investigator's inability to determine the precise ignition mechanism does not invalidate the origin

determination so long as the origin analysis is based on observed fire patterns, electrical artifacts, and other physical evidence.

Here, McClure's testimony concerns the area where the fire began, not the precise electrical component that initiated it. Defendant's criticisms regarding relay locations, therefore, go to the weight of the testimony rather than its admissibility.

### 4.    Helpfulness to the Jury

Ox Bodies also contends that Mr. McClure's origin opinion is so broad that it amounts to common knowledge and is unhelpful to the jury. (DE 64-1 at 11–15.) The Court disagrees. Although the identified origin area is not confined to a single component, the opinion rests on specialized interpretation of burn patterns, electrical artifacts, and fire dynamics beyond the experience of lay jurors. (DE 64-2 at 10–18.) Interpreting burn patterns, electrical damage, arc mapping artifacts, and other indicators of fire progression requires specialized training and experience. Jurors lack the technical background to interpret such evidence reliably without expert assistance. In this District, the touchstone of admissibility under Rule 702 is whether the expert's testimony will assist the trier of fact, not whether it is framed with mathematical precision. *See Hickerson v. Yamaha Motor Corp.*, No. 8:13-cv-02311-JMC, 2016 WL 4123865, at *2 (D.S.C. July 29, 2016). McClure's testimony will therefore assist the jury in understanding the physical evidence associated with the fire's development.

Accordingly, the Court finds that Mr. McClure's origin opinions are grounded in accepted fire-investigation principles and satisfy Rule 702. Ox Bodies' motion to

exclude his testimony (DE 64) is denied. Any remaining challenges to the scope or interpretation of McClure's origin analysis are appropriate subjects for cross-examination and competing expert testimony at trial.

**B.    K.R. Davis, P.E.**

Ox Bodies also moves to exclude the testimony of Plaintiff's electrical engineering expert, K.R. Davis, P.E. (DE 65.) Ox Bodies argues that Davis's opinions fail to satisfy Rule 702 because they rely on speculation, depart from accepted fire-investigation methodology, and attempt to attribute the fire to a specific relay without sufficient factual support. (DE 65-1.)

### 1.    Qualifications

Ox Bodies does not dispute Mr. Davis's general qualifications as an electrical engineer and fire investigator. (*See* DE 65-1 at 7–10.) Even so, the Court must independently determine whether Davis is qualified to offer the opinions at issue under Rule 702.

The record reflects that Davis possesses education, training, and experience in electrical engineering and fire investigation sufficient to qualify him to offer expert testimony regarding electrical fire causation. *See United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007). Davis holds a Bachelor of Science in Electrical Engineering, is a licensed professional engineer, and maintains professional certifications in fire and explosion investigation and vehicle fire investigation. (DE 67-1 at 35–36.) He has also worked for more than fifteen years as a consulting engineer investigating fires and electrical failures.

11

Based on this record, the Court finds that Davis is qualified under Rule 702 to offer expert testimony concerning electrical systems, electrical failure mechanisms, and potential electrical ignition sources.

### 2.    Reliability of Davis's Methodology

Ox Bodies first argues that Davis's opinions violate accepted fire-investigation methodology because he did not determine ignition temperature, quantify the duration of any electrical fault, or conduct testing to replicate the proposed ignition mechanism. (DE 65-1 at 11–18.) Plaintiff responds that Davis's methodology complies with the scientific method described in NFPA 921 and that the standard permits investigators to rely on deductive reasoning and professional experience in forming hypotheses about electrical fire causation. (DE 67.) Although NFPA 921 does not require laboratory testing in every fire investigation, Rule 702 requires the proponent to demonstrate that the expert's conclusions reliably apply accepted principles to the facts of the case.

The Court agrees that portions of Davis's analysis lack sufficient methodological support. Davis did not perform testing to confirm that the specific relay installed on Truck No. 863 could produce sufficient heat to ignite surrounding materials. Nor did he quantify the ignition temperature or duration necessary to produce ignition under the conditions present in the vehicle. (Davis Dep., DE 67-1 at 188:7–190:13.) Davis also relied in part on exemplar relay testing and recall information involving different relay configurations and applications. (DE 65-2 at 7–8; Davis Dep., DE 67-1 at 142:1–145:21.)

12

As the Supreme Court has explained, courts may exclude expert testimony where "there is simply too great an analytical gap between the data and the opinion proffered." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). The Fourth Circuit likewise instructs that expert opinions must rest on assumptions supported by the evidentiary record and may not be speculative. *See Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 142–44 (4th Cir. 1994).

Here, the record does not contain sufficient evidence connecting the exemplar relay testing or recall materials to the specific relay installed in Truck No. 863. Without testing, analysis, or other evidence showing that the relay in question was capable of generating sufficient heat to ignite the surrounding materials under the conditions present in the truck, the Court concludes that the methodology supporting Davis's specific ignition-source opinion is insufficient under Rule 702. See *Fireman's Fund Ins. Co. v. Tecumseh Prods. Co.*, 767 F. Supp. 2d 549, 554–56 (D. Md. 2011) (excluding electrical-fire causation testimony where the expert failed to determine whether the proposed electrical source could produce sufficient heat and duration to ignite the initial fuel and relied instead on untested hypotheses and exemplar comparisons). Ox Bodies also argues that Davis failed to rule out other potential causes of the fire. The Court need not resolve each proposed alternative cause individually because the deficiency identified above—the absence of a reliable connection between the relay failure theory and the evidence here—is sufficient to preclude the specific ignition-source opinion under Rule 702.

13

### 3.    Application of the Methodology to the Facts

The Court nevertheless finds that Davis's testimony is not wholly inadmissible. Davis's report also includes engineering analysis concerning the truck's electrical system, including the condition of the wiring harness, the lack of circuit protection in portions of the tarp-system wiring, and the potential for energized conductors to create ignition sources within the electrical system.

These opinions are grounded in Davis's inspection of the physical evidence and his application of electrical engineering principles to it. Such testimony may assist the jury in understanding the electrical mechanisms that could have produced a fire in the relevant portion of the vehicle.

Accordingly, Davis may testify regarding electrical fire mechanisms, wiring damage, circuit protection, and the potential for energized conductors to act as ignition sources within the electrical system of Truck No. 863. However, Davis may not opine that a specific relay or tarping-system component installed on Truck No. 863 was the ignition source of the fire.

This limited exclusion reflects the Court's obligation under Rule 702 to ensure that expert testimony rests on a reliable foundation while permitting otherwise admissible technical testimony that may assist the trier of fact. See *Sardis*, 10 F.4th at 281.

To the extent Davis discussed the circuit breaker during his deposition testimony, the Court finds that those statements elaborate on the electrical-fault

14

theory disclosed in his report and are not a new expert opinion requiring exclusion under Rule 26.

Accordingly, Ox Bodies' motion to exclude Davis's testimony (DE 65) is **GRANTED IN PART AND DENIED IN PART**. Davis may testify regarding electrical fire mechanisms and the electrical condition of Truck No. 863, but he may not identify a specific relay or tarping-system component as the ignition source.

## IV.    CONCLUSION

Accordingly, Defendant and Third-Party Plaintiff Ox Bodies, Inc.'s Motion to Exclude the Testimony of Kenny A. McClure, P.E., M.S.M.E., CFEI (DE 64), is DENIED, subject to the limitations outlined in this Order. Defendant and Third-Party Plaintiff Ox Bodies, Inc.'s Motion to Exclude the Testimony of K.R. Davis, P.E. (DE 65) is GRANTED IN PART AND DENIED IN PART.

Mr. McClure may testify regarding fire-origin opinions but may not offer causation opinions, including opinions identifying a specific ignition source or component failure. Mr. Davis may testify regarding general principles of electrical fire causation, the condition of the vehicle as observed, and the ways electrical faults may contribute to fire development, but may not identify a specific relay or tarping-system component as the ignition source, absent a reliable methodological basis tying that component to the fire.

To the extent disputes arise at trial concerning the scope of expert testimony or the application of the limitations set forth in this Order, the Court will address

those matters in the context of the evidence presented and may revisit the admissibility of particular opinions as necessary under Rule 702.

**IT IS SO ORDERED**.


Joseph Dawson, III
United States District Judge

Florence, South Carolina
March 17, 2026

16